UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN DOE #1, et al.                                          PLAINTIFFS

V.                          CIVIL ACTION NO.  3:22-CV-468-KHJ-MTP

MARRIOTT INTERNATIONAL, INC., et al.                DEFENDANTS

ORDER

Before the Court are Defendants Marriott International, Inc.'s ("Marriott");
Brookfield Hospitality Properties, LLC's ("Brookfield"); Island Hotel Company
Limited's ("Island Hotel"); and Atlantis Resort SPE Limited's ("Atlantis") [45]
Motion to Dismiss; [73] Motion to Strike the Affidavit of James W. Smith, Jr.; and
[80] Motion to Strike Plaintiffs' Supplemental Response. Also before the Court are
Plaintiffs' [52] Motion for Discovery; [63] Motion to Strike the Affidavit of Jack
Tamburello; [78] Motion for Oral Argument; and [83] Motion for Leave to File a
Supplemental Response.

For the following reasons, the Court grants Defendants' [45] Motion to
Dismiss and [80] Motion to Strike Plaintiffs' Supplemental Response, and it denies
the remaining motions. Because the Court did not consider the affidavits of James
W. Smith, Jr., or Jack Tamburello in its decision, the Plaintiffs' [63] Motion to
Strike and Defendants' [73] Motion to Strike are denied as moot.

I.     Facts and Procedural History

In June 2021, Plaintiffs[1] traveled to Paradise Island, Bahamas to stay at the Atlantis Resort. [1-1] ¶¶ 26, 28. According to Plaintiffs, Defendants Marriott, Brookfield, Island Hotel, and Atlantis all "share a community of interest in the ownership and operation of the Atlantis [R]esort" and are engaged in a "joint venture" regarding the resort. *Id.* ¶¶ 22–23.

When Plaintiffs arrived at the Atlantis Resort on June 13, 2021, their reserved rooms were unavailable. *Id.* ¶ 28; [46-1] at 8–11. So, the resort provided Plaintiffs with temporary rooms. [1-1] ¶ 28. When registering for the rooms, the hotel staff asked Plaintiffs to sign four, identical guest registration forms entitled "Acknowledgement, Agreement, and Release." [1-1] ¶ 24; [46] at 3; [46-1] at 8–11. Plaintiff Ashley Ogden signed three of the forms, and another Plaintiff signed the fourth. *See* [46-1] at 8-11. Those forms had the following forum-selection clause ("FSC"):

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, I irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

*Id.*

---

[1] Plaintiffs appear as John and Jane Does "due to [their] concerns related to threats made [against them]" before leaving The Bahamas. [61-1] ¶ 50; [61-2] ¶ 30. "Whether a plaintiff is allowed to proceed anonymously rests within the sound discretion of the court." *Doe v. Yackulic*, No. 4:18-CV-84, 2018 WL 11443619, at *2 (E.D. Tex. June 15, 2018). All Plaintiffs, except John Doe # 1, may proceed anonymously. John Doe #1 is Ashley Ogden, who is the attorney representing himself and the other Plaintiffs in this case. *See* [78] at 2.

On the morning of June 17, Ogden and one of the Plaintiffs were asleep when an unknown assailant entered their room. [1-1] ¶ 29. The assailant began stealing items from the room, and when Ogden tried to stop him, a struggle ensued. *Id.* ¶ 30. The attack caused Ogden physical and emotional injuries, and he incurred substantial medical bills. *Id.* ¶ 31. The other Plaintiffs suffered similar injuries. *Id.*

Plaintiffs allege the Defendants knew the assailant had been present on the resort's premises several days before the attack. *Id.* ¶ 29. And while he was on the property, the assailant obtained one of the resort's master key cards, which gave him access to Plaintiffs' rooms. *Id.* Plaintiffs also allege that the Defendants directly targeted them before their trip with "emails, solicitations, and advertisements," promising a "safe, fun, [and] secure" family vacation. *Id.* ¶ 32.

Plaintiffs sued in Mississippi state court on June 17, 2022. *See id.* They asserted claims against Defendants based on "negligent supervision, negligent training . . . failure to provide adequate security . . . breach of contract . . . failure to follow industry standards . . . failure to remove trespassers . . . negligent infliction of emotional distress . . . [and] respondent [sic] superior," among other things. *Id.* ¶¶ 35–36, 39–40, 43–44, 47–48.

Defendants removed the case to this Court on August 12. *See* [1]. They then filed their [45] Motion to Dismiss. They argue this case should be dismissed because (1) Plaintiffs agreed to a valid FSC in favor of The Bahamas, (2) the traditional *forum non conveniens* factors favor dismissal, and (3) the Court lacks personal jurisdiction over them. Defs.' Mem. Supp. Mot. Dismiss [46] at 5, 16, 20. Plaintiffs

counter that, among other things, the FSC is not valid because its incorporation into the guest registration forms resulted from fraud. Pls.' Mem. Supp. Resp. Opp. Defs.' Mot. Dismiss [62] at 10–14.

Plaintiffs moved for discovery and oral arguments on the FSC's validity. *See* [52]; [78]. They also filed a supplemental response to Defendants' [45] Motion to Dismiss on April 12, 2023—nearly three months after Defendants' Reply to their initial response and without leave from the Court. *See* [77]. Defendants moved to strike Plaintiffs' [77] Supplemental Response. *See* [80]. Only then did Plaintiffs' file their [83] Motion for Leave to File a Supplemental Response. The Court first addresses Defendants' [80] Motion to Strike; Plaintiffs' [83] Motion for Leave to File a Supplemental Response; and Plaintiffs' [52] and [78] Motions for Discovery and Oral Arguments (collectively, "Preliminary Motions"). It then addresses Defendants' [45] Motion to Dismiss.

II.     Preliminary Motions

A.  Plaintiffs' Supplemental Response

"Rule 7 of the Local Rules of Civil Procedure contemplates only the filing of: (1) a motion; (2) a response; and (3) a reply." *Brown v. Wiggins*, No. 3:18-CV-487, 2019 WL 3723628, at *1 (S.D. Miss. Aug. 7, 2019) (citing L.U. Civ. R. 7(b)(4)). "Leave of court is required to file an additional brief . . . ." *Id.* (quotation omitted). "[S]urreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (quotation omitted). They "often amount to little more than a strategic effort by the nonmovant to have the

4

last word on a matter." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) (quotation omitted). "Some factors to consider [when deciding whether to grant leave to file a surreply] include whether new arguments have been raised in the reply brief and whether these arguments have been identified in the motion for leave to file." *Id.*

Plaintiffs' [77] Motion for Leave to File a Supplemental Response is denied for two reasons. First, Plaintiffs did not seek leave to respond until after they had filed it. And although Plaintiffs are correct that "the language of L.U. Civ. R. 7(b)(4) does not address supplemental briefing," [83] at 2, courts in this district have found that Rule 7(b)(4) applies to supplemental briefing. *See, e.g.*, *Brown*, 2019 WL 3723628, at \*1. Second, Plaintiffs do not identify any new arguments raised by the Defendants in their Reply. *See* [77], [83]. Accordingly, the Court denies Plaintiffs' [83] Motion for Leave to File a Supplemental Response and grants Defendants' [80] Motion to Strike Plaintiffs' Supplemental Response.

### B. Discovery and Oral Arguments

"A district court has broad discretion in all discovery matters." *Moore v. CITGO Refin. & Chems. Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013). That includes the discretion to grant or deny discovery on issues of jurisdiction and venue. *See Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 460 (5th Cir. 2016). A court also has discretion to grant or deny oral arguments. *See* L.U. Civ. R. 7(b)(6)(A). "When the lack of venue is clear, discovery would serve no purpose and

should not be allowed." *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 481 (W.D. Tex. 2016) (citation omitted).

Plaintiffs request limited discovery and oral arguments on the validity of the FSC. [53] at 4; [78] at 2. They contend discovery and oral arguments will help Plaintiffs prove that they orally declined the FSC and provided a written document disclaiming the FSC. *See* [53] at 4; [78] at 2. Defendants counter that Plaintiffs' discovery requests are "unnecessary, burdensome, expensive, [and] onerous," and they "should not continue to be forced to expend costs to defend themselves in an improper venue." [57] at 2, 4–5.

Discovery and oral arguments on the FSC are unnecessary. First, even accepting all of Plaintiffs' alleged facts as true, the Court would still enforce the FSC because allowing Plaintiffs to rely on contrary oral or written agreements would "defeat the ability of written contracts to provide certainty and avoid dispute." *See infra* Part III.A.2.b. Second, the discovery would serve no purpose because even if the FSC were not enforceable, the case should still be dismissed on traditional *forum non conveniens* grounds. *See infra* Part III.B. And third, the Court agrees Defendants should not be forced to continue to litigate in an improper venue because it undermines the very purpose of the FSC. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) (explaining that FSCs "protect[] [the parties'] legitimate expectations and further[] vital interests of the justice system" by "spar[ing] litigants unnecessary costs [and] reliev[ing] courts of time consuming pretrial motions").

III.     Motion to Dismiss

Defendants argue this case should be dismissed for three reasons: (1) Plaintiffs agreed to a valid FSC in favor of The Bahamas, (2) the traditional *forum non conveniens* factors favor dismissal, and (3) the Court lacks personal jurisdiction over them. [46] at 5, 16, 20.

A.  Forum Selection Clause

The Fifth Circuit applies a three-part test to determine whether a court should enforce an FSC. *See Weber v. PACT XPP Techs, AG*, 811 F.3d 758, 768–76. First, a court must decide whether the clause is "mandatory or permissive." *See id.* at 768. If the clause is mandatory, a court must then decide whether the clause is valid. *Id.* at 773. Finally, a court must apply the modified *forum conveniens* analysis outlined in *Atlantic Marine Construction Co., Inc. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013). *Id.* at 775–76. The Court addresses each step in turn.

1.  Mandatory or Permissive

The FSC is mandatory. The Fifth Circuit "recognizes a sharp distinction between mandatory and permissive FSCs." *Id.* at 768. A mandatory FSC requires parties to litigate their dispute in a specified forum. *Id.* A permissive FSC, though, "is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." *Id.* "An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum." *Id.* Generally, courts have found FSCs that mandate a forum will have "exclusive"

jurisdiction over the parties to be mandatory. *See, e.g., Collin Cnty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45, 51 (5th Cir. 2007).

The FSC states that "I *irrevocably* agree to the Supreme Court of The Bahamas as the *exclusive* venue for any such proceedings whatsoever." [46-1] at 8 (emphasis added). The use of the words "irrevocably" and "exclusive" demonstrate the parties' intent to bind themselves to the particular forum of the Supreme Court of The Bahamas. *See Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 919 (W.D. Tex. 2016). In other words, that language is "unambiguously mandatory." *Id.*

### 2. Validity

The FSC is valid. The Fifth Circuit "applies a strong presumption in favor of the enforcement of mandatory FSCs." *Weber*, 811 F.3d at 773. That presumption "may be overcome . . . by a clear showing that the clause is 'unreasonable' under the circumstances." *Id.* (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)). An FSC is unreasonable if:

> (1) the incorporation of the FSC into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the FSC would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963). But "the party resisting enforcement on these grounds bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1997)).

Plaintiffs argue the FSC is not valid because (1) the Defendants were bound by a preexisting agreement requiring this case to be litigated in the United States; (2) it was the product of fraud; (3) it was the product of overreaching; (4) it will effectively deprive them of their day in court; (5) it is fundamentally unfair; and (6) Ogden is the only one who signed the guest registration forms. [62] 2–4, 10–18. The Court addresses each argument in turn.

a. Preexisting Agreement

Plaintiffs first argue the FSC is not valid because the parties were already "bound by a preexisting agreement" under Marriott's Bonvoy Loyalty Program. [62] at 2–3; [61-1] ¶¶ 4–14. The FSC in that agreement states, "[t]he exclusive jurisdiction for any claim or action arising out of or relating to the Loyalty Program or the Program Rules may be filed only in the state or federal courts located in the State of Maryland, United States." [62] at 3; [61-1] at 28.

Plaintiffs' argument fails because the plain language of the Loyalty Program's FSC states that it applies only to "any claim or action arising out of or relating to the Loyalty Program or the Program Rules . . ." [61-1] at 28. And the Loyalty Program and Program Rules only "govern the Company's relationship with members of the Loyalty Program . . ., including how Members manage their accounts, book reservations, [and] achieve business relationships with the Loyalty Program such as airline frequent flyer programs." *Id.* at 17–18. So, the Loyalty Program agreement does not govern Atlantis Resort's relationship with its hotel guests.

9

b.  Fraud

Plaintiffs next argue that the FSC is not valid because it is the result of fraud. [62] at 10–15. Plaintiffs contend that Defendants had a policy of allowing guests to orally decline the FSC upon arriving at Atlantis Resort, and that upon their arrival, they told the front desk staff that they did not agree to the FSC. [62] at 10–11. They also allege Ogden supplied a written document to the front desk staff saying that Plaintiffs did not agree to the FSC. *Id.* at 11. According to Plaintiffs, the front desk staff accepted Ogden's verbal and written modifications, but "[they] did not direct Plaintiffs to alter or write any declines on the [guest registration] forms." *Id.* Plaintiffs contend that Defendants' reliance on the guest registration forms are "fraudulent and incomplete because they do not show where Ogden declined the [FSC] and Defendants accepted the modification." *Id.* at 11, 14.

Plaintiffs' arguments are unpersuasive for two reasons. First, Plaintiffs have failed to meet their "heavy burden of proof" that the incorporation of the FSC was the product of fraud. *See Haynsworth*, 121 F.3d at 963 (quoting *Zapata*, 407 U.S. at 17). Instead, they only rely on their own affidavits. *See* [62] at 11–14; [61-1]; [61-2]. Most notably, Plaintiffs do not provide a copy of the written document Ogden allegedly provided to the front desk when they arrived at the Atlantis Resort disclaiming the FSC.

Contrarily, Defendants supply substantial evidence that the FSC is valid. That evidence includes (1) the four guest registration forms signed by Ashley and another Plaintiff in 2021, [46-1] at 8–11; (2) two guest registration forms signed by

Ashley Ogden in 2019 with the same FSC as the 2021 guest registration forms, *id.* at 13–14; (3) emails sent to Plaintiffs before their trip informing them that "[d]uring guest registration at the Resort you will be asked to sign a form agreeing [to the FSC]" and that Plaintiffs could "revise the language by crossing out any words you do not accept," *id.* at 19, 34, 49, 65, 80; (4) Defendants' website, which includes the same information as the emails, *id.* ¶ 17; *see also* http://www.atlantisbahamas.com/terms; (5) Plaintiffs' check-in log "devoid of any notes regarding [their] verbal objection to the [FSC]," [46-1] at 92; [72] at 4; and (6) the affidavits of two high-ranking Atlantis employees stating that Defendants had a policy of allowing guests to modify the guest registration forms by crossing out any undesired terms, [46-1] ¶ 16; [46-4] ¶ 6.

Second, Plaintiffs' arguments are unpersuasive because "policy and practical considerations" dictate they should have physically stricken the FSC from the contract. *See Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. SA05CA0172, 2005 WL 1862631, at \*6–10 (W.D. Tex. July 8, 2005). In *Donnelley*, the parties entered into a partnership agreement with an FSC requiring the plaintiff to bring its claims in Mexico City. *Id.* After the plaintiff sued in the Western District of Texas, the defendant moved to dismiss based on the FSC. *Id.* The plaintiff argued that the court should not enforce the FSC because it was the product of fraud. *Id.* at \*3. Specifically, the plaintiff claimed the defendant fraudulently induced them into signing the agreement by orally representing the defendant would not seek to enforce the FSC. *Id.* at \*6.

11

The court rejected the plaintiff's argument and enforced the FSC, finding that "policy and practical considerations" dictated the plaintiff should have stricken the provision from the contract. *Id.* at *8 (citation omitted). It reasoned that allowing the plaintiff to rely on the contrary, oral agreement would "defeat the ability of written contracts to provide certainty and avoid dispute." *Id.* And it concluded that "a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and [should not] be rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract." *Id.*

Like the plaintiffs in *Donnelly*, the Plaintiffs here ask the Court not to enforce the FSC based on oral representations made by the front desk staff. But Plaintiffs presumably read the guest registration forms and knew what they were signing. *See In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 358 (5th Cir. 1986) ("Under elementary principles of contract law, one is presumed to have read a contract that one signs . . .."). In fact, they signed the same forms when they visited the Atlantis Resort two years before the June 2021 incident. *See* [46-1] at 13–14. Defendants' emails and website also informed Plaintiffs they could modify the agreements by crossing out any words they did not accept. *See* [46-1] at 19, 49, 65, 80; http://www.atlantisbahamas.com/terms. Still, Plaintiffs signed the guest registration forms without making any modifications. Accordingly, the Court should enforce the FSC as written in the guest registration form to promote "greater certainty . . . and lessen[] the potential for error, misfortune, and dispute." *See*

*Donnelly*, 2005 WL 1862631, at *8 (citation omitted). Plaintiffs relied on the alleged contrary oral agreement at their own peril and should not be "rewarded with a claim for fraudulent inducement" now that Defendants seek to invoke their rights under the guest registration forms. *See id.*

c.   Overreaching

Plaintiffs argue the incorporation of the FSC is the product of overreaching because the Defendants are "attempting to take unfair commercial advantage of [them]." [62] at 14–15. "[T]he precise boundaries of what constitutes 'overreaching' [is] a nebulous concept at best." *Haynsworth*, 121 F.3d at 965. Generally, overreaching occurs when there is "an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Id.* at 965 n.17 (quotation omitted)

Plaintiffs' argument that Defendants overreached by taking unfair commercial advantage of them is foreclosed by *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). "There, the Court enforced an [FSC] against an unsophisticated cruise ship passenger, notwithstanding the disparity in the parties' bargaining power and the fact that the contract had not been subject to negotiation." *Haynsworth*, 121 F.3d at 965. Besides the fact that Ogden—a lawyer— is more sophisticated than the passenger in *Carnival Cruise Lines*, there is "nothing of substance to distinguish that case from the case at bar." *See id.* The Court rejects Plaintiffs' argument that the FSC is invalid because of overreaching.

13

d.   Deprivation of Day in Court

Plaintiffs argue they will be deprived of their day in court because of the grave inconvenience or unfairness of litigating in The Bahamas. *See* [62] at 16–17. They maintain they (1) cannot retain or afford Bahamian attorneys because The Bahamas does not allow contingency agreements and (2) "would be unable to hire multiple Bahamian attorneys without conflicts of interest with Atlantis." *Id.* As to Plaintiffs' first argument, a court should not refuse to enforce an FSC just because "there is evidence in the record to indicate that the [plaintiffs] are physically and financially incapable of pursuing . . . litigation [in a foreign forum]." *Carnival Cruise Lines*, 499 U.S. at 594; *see also Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) (finding plaintiff's "unsupported statements concerning financial difficulties . . . less than persuasive" in upholding an FSC forcing plaintiff to litigate her claims in Greece). And the Fifth Circuit has held that the lack of a contingent fee system "is not a factor that controls or even significantly influences [a] *forum non conveniens* determination." *Coakes v. Arabian Am. Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987).

Plaintiffs' second argument is also not persuasive. They argue "they will have great difficulty finding any attorneys who are not already conflicted out or who are willing to burn bridges to sue Atlantis" because "Atlantis owns or controls everything in The Bahamas." [62] at 17–18. Plaintiffs supply no evidence to support that assertion except Ogden's own affidavit and one Defendants' statement that "[t]ourism is the single largest industry in The Bahamas and the Atlantis is The

14

Bahama's largest hotel and single largest private employer." *See id.* at 17–18. That conclusory evidence does not satisfy Plaintiff's "heavy burden of proof." *Haynsworth*, 121 F.3d at 963. They have not shown that they will be deprived their day in court if they are forced to litigate their claims in The Bahamas.

e.   Unfairness

Plaintiffs contend that the fundamental unfairness of Bahamian law will deprive them of a remedy. *See* [62] at 15–16. They insist that Bahamian law is unfair because it (1) will deny them a right to a trial by jury and (2) it lacks a contingent fee system and instead incorporates a "loser-pays" system. *Id.* But an FSC cannot "be circumvented by a party's asserting the unavailability of American remedies." *Haynsworth*, 121 F.3d at 967 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517–19 (1974)). "An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 212 (5th Cir. 2010) (quotation omitted). Consequently, "lack of jury trials does not render a forum inadequate." *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. III, LLC*, No. H-11-2382, 2012 WL 2368302, at *6 (S.D. Tex. June 21, 2012) (collecting cases). And again, the lack of a contingent fee system "is not a factor that controls . . . [a] *forum non conveniens* determination." *Coakes*, 831 F.2d at 576. Bahamian law is not fundamentally unfair, and Plaintiffs will not be deprived of a remedy if the FSC is enforced.

f. Closely-Related Doctrine

Finally, Plaintiffs argue that "even if the Court finds that the [FSC] applies to [Ogden] . . . the Court should find that the clause does not bind the rest of the Plaintiffs because they are non-signatories under the closely-related doctrine." [62] at 35. They contend that only Ogden signed the forms and "he did not hold the authority to sign the cards for any other adults or children listed as Plaintiffs in this lawsuit." *Id.*

For an FSC to be enforceable against a non-signatory, "the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441 (5th Cir. 2022) (quotations omitted). The Fifth Circuit considers "a few fundamental factors" to determine whether non-signatories are closely related to the dispute: "(1) common ownership between the signatory and non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally, and (4) awareness of the [FSC] particularly." *Id.* But that is not a "rigid test," and each case is determined based on its specific circumstances. *Id.*

The other Plaintiffs are bound by the FSC because they are closely related to the dispute. First, Plaintiffs received direct benefits from the contract at issue. They arrived at the Atlantis Resort and the guest registration forms were signed on June 13. *See* [1-1] ¶ 28; [46-1] at 8–11. Plaintiffs stayed at the resort and enjoyed its benefits until the attack occurred on the morning of June 17. *See* [1-1] ¶ 29; *see also Wylie v. Island Hotel Co. Ltd.*, No. 15-24112, 2018 WL 3421374, *4 (S.D. Fla. July

16

13, 2018) (finding non-signatory plaintiff "manifested assent" to exactly the same agreement as this case when she accepted the benefits of the agreement by staying at the resort). Second, the non-signatory Plaintiffs knew about the agreement generally and the FSC particularly. They received confirmation emails from the resort informing them about the guest registration form and the FSC, and the same information was on Defendants' website. *See* [46-1] at 19, 34, 49, 65, 80; http://www.atlantisbahamas.com/terms.

Finally, it was foreseeable the non-signatories would be bound because the guest registration forms contained a provision stating "I represent and warrant that I have authority to sign this document on behalf of myself and the persons listed below. . . ." [46-1] at 8–11. And the non-signatory Plaintiffs' names are located at the bottom of those forms. *See id.* "It would defy practical reality to allow Plaintiff[s] to avoid what [Ogden] expressly agreed to" when he signed the forms on their behalf. *See Wylie*, 2018 WL 3421374, at *3. This scenario is like cruise ship tickets where courts routinely find that passengers have constructive notice of the ticket terms and conditions and are bound by the agreement even if a friend or relative has the tickets. *See id.* at *3 n.1 (collecting cases). Consequently, the non-signatory Plaintiffs are "closely related" to the dispute and are bound by the FSC.[2]

### 3. *Atlantic Marine*

Because the FSC is mandatory and valid, the Court now applies the modified *forum non conveniens* analysis from *Atlantic Marine*. *Weber*, 811 F.3d at 768.

---

[2] Even if the non-signatory Plaintiffs were not closely related, dismissal would still be proper on the grounds of traditional *forum non conveniens. See infra* Part III.B.

"The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. Normally, a district court must weigh private and public interest considerations when deciding a *forum non conveniens* motion. *Id.* at 62. But "[t]he calculus changes [in two ways] . . . when the parties' contract contains a valid forum selection clause." *Id.* at 63. "First, the plaintiff's choice of forum merits no weight." *Id.* "Second, a court . . . should not consider arguments about the parties' private interests." *Id.* at 64. In other words, "a district court may consider arguments about public-interest factors only." *Id.*

The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Barnett*, 831 F.3d at 309. And "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selections clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

a. Administrative Difficulties

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009). But this factor appears to be "the most speculative." *Id.*

18

And when "several factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Atchafalaya Basinkeeper v. Bernhardt*, No. 20-651, 2021 WL 3463904, at *3 (M.D. La. Mar. 12, 2021).

Defendants contend "the U.S. court system is plagued with court congestion issues, and there are no concerns with the Supreme Court of The Bahamas." [46] at 15. Plaintiffs counter "the Federal District Courts in Mississippi are not congested." [62] at 23. But neither party supplies any evidence or statistics to support their arguments. So, this factor is neutral.

### b.  Local Interest

"There is a local interest in having localized controversies decided at home." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981). That interest "regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to the suit." *Def. Distrib. V. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)). "Important considerations include the locations of the injury, witnesses, and the Plaintiff's residence." *Id.* "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quotation omitted).

This factor favors enforcing the FSC. Although the Plaintiffs have a significant connection to this forum because they are Mississippi residents, the Defendants do not share that connection. Atlantis Resort and IHCL are Bahamian

19

corporations; Marriott is a Maryland corporation; and Brookfield is a Delaware corporation. [1-1] ¶¶ 9–12.  More importantly, this forum has little connection to the events giving rise to this suit. The break-in and assault occurred in The Bahamas, Plaintiffs' injuries occurred in The Bahamas, and most of the relevant witnesses and evidence are in The Bahamas. Finally, as a matter of policy, The Bahamas has a much stronger local interest in deciding this action. *See Horberg v. Kerzner Int'l Hotels Ltd.*, 744 F. Supp. 2d 1284, 1295–96 (S.D. Fla. 2007) (analyzing public interest factors in a similar case with similar defendants). This case "involves a prominent Bahamian resort, and tourism is the largest industry in The Bahamas." *Id.* at 1296. Consequently, "The Bahamas has a vital interest in regulating the standards of conduct of the Bahamian Defendants." *Id.*

Plaintiffs argue that "although the break-in and assault occurred at the Atlantis Resort, the vast majority of the evidence and witnesses are located in the United States." [62] at 24. That is an overstatement. Although two of the Defendants—Marriott and Brookfield—are American corporations and several witnesses related to the issues of Defendants' solicitations and Plaintiffs' damages are in the United States, the crux of this action is the Defendants' negligence leading to the assault and the break-in. *See Horberg*, 744 F. Supp. 2d at 1296. The "vast majority" of the evidence and witnesses concerning the assault and break-in are in The Bahamas.

Plaintiffs also contend that "Mississippi and the United States both have a strong local interest in having this lawsuit litigated here, as the case involves

Mississippi/U.S. citizens." [62] at 24. "[T]he United States does have an interest in providing its own citizens with a forum to seek redress for injuries caused by foreign defendants." *Horberg*, 744 F. Supp. 2d at 1296 (quotation omitted). But because the Plaintiffs voluntarily traveled to The Bahamas more than once, "the interest of The Bahamas outweighs that of the United States." *Id.*; *see also Kristoff v. Otis Elevator Co.*, No. 96-4123, 1997 WL 67797, at *4 (E.D. Penn. Feb. 14, 1997) (finding Eastern District of Pennsylvania had "little interest in adjudicating the proper maintenance of a Bahamian elevator, even if its malfunction injured a [Pennsylvania] resident while she was voluntarily in The Bahamas").

### c.   Conflict of Law

The third and fourth factors involve issues applying foreign law. "[T]he need to apply foreign law [often] point[s] toward dismissal." *Piper*, 454 U.S. at 260; *see also Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 227 (5th Cir. 2020) (finding the "English judicial system [was] in a much better position to handle a dispute" because English law governed the agreement giving rise to the dispute); *but see UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 221 (5th Cir. 2009) (upholding district court's analysis that federal courts have "ably applied Saudi law"). And even though federal district courts often apply foreign law, it is more efficient for actions to be adjudicated in a court familiar with the applicable law. *See Kristoff*, 1997 WL 67797, at *4 (citations omitted).

Plaintiffs argue that Bahamian law would not apply in this case because they "never consented to the [FSC]." [62] at 25. But as discussed above, the FSC is valid

and included a choice-of-law provision stating that "any claims . . . against the Resort Parties resulting from any events occurring in The Bahamas shall be governed . . . [by] the laws of the Commonwealth of The Bahamas." [46-1] at 8. And even if there were not a choice-of-law provision, Mississippi choice-of-law rules dictate that Bahamian law would apply.

Mississippi choice-of-law analysis involves three steps. *Hancock v. Watson*, 962 So. 2d 627, 629 (Miss. Ct. App. 2007). "First, the Court must determine whether the conflicting laws are substantive or procedural." *Id.* "The Court must then classify the substantive area of law—contract, tort, or property—applicable to the conflicting laws . . . ." *Id.* "Finally, the Court must apply the appropriate analytical provision to the conflict." *Id.* Here, the first two steps are easy: the conflicting laws are substantive and primarily involve tort issues. Thus, the Court applies the analytical test appropriate for torts — the "most significant relationship test." *See id.*

That test dictates that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which . . . has the most significant relationship to the occurrence and the parties." *Id.* (quoting Restatement (Second) of Conflicts of Law § 145). "Contacts to be taken into account . . . include: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, resident, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.*

Plaintiffs' injuries occurred in The Bahamas; the conduct causing the injury occurred in The Bahamas; two of the Defendants are Bahamian corporations; and the relationship between the parties is centered in The Bahamas. Those contacts favor applying Bahamian law. On the other hand, the only contact in favor of applying Mississippi law is that Plaintiffs are residents of Mississippi. So, The Bahamas has the most significant relationship with this case and Bahamian law would apply.

Because Bahamian law applies, the third and fourth factors favor enforcing the FSC. Though the Court could apply Bahamian law, the interests of efficiency and avoiding unnecessary problems of applying a foreign law favor enforcing the FSC.

### d.  Unfairness to Citizens

The final public interest factor also favors dismissal. As noted, The Bahamas has a far greater connection to this case than Mississippi. "Jury duty should not be imposed on the citizens of [Mississippi] in a case that is [only] slightly connected with this state." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 803 (5th Cir. 2007). Plaintiffs voluntarily traveled to The Bahamas and assumed the risk that they would be subject to litigation there. Mississippi jurors should not be burdened with jury duty based on Plaintiffs' actions.

All the public interest factors except the administrative difficulties favor dismissal. This is not one of those "unusual cases" where the Court should disregard the FSC. *See Atl. Marine*, 571 U.S. at 64. Because the FSC is mandatory, valid, and

the public interest factors favor dismissal, this case should be dismissed without prejudice for the Plaintiffs to refile their suit in The Bahamas.

### B.  Traditional *Forum Non Conveniens*

Even assuming the FSC is unenforceable, this case should still be dismissed based on traditional *forum non conveniens* grounds.

"A federal court sitting in diversity applies the federal law of *forum non conveniens* in deciding a motion to dismiss in favor of a foreign forum." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (citation omitted). The defendant bears the burden of showing that dismissal is proper. *Id.*

The doctrine of *forum non conveniens* allows a district court to decline to exercise jurisdiction even when venue is proper. *Gulf Oil v. Gilbert,* 330 U.S. 501, 506–07 (1947). "To determine whether to dismiss a case under *forum non conveniens*, a district court first assesses whether there is an adequate and available alternative forum." *Sierra Frac*, 960 F.3d at 203 (citation omitted). "Then the court conducts a balancing test based on 'private-interest' and 'public-interest' factors." *Id.* (citation omitted). "The court must bear in mind that the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice." *DTEX*, 508 F.3d at 794 (quotation omitted).

### 1.  Available and Adequate Alternative Forum

The Bahamas is an available alternative forum. "An alternative forum is considered available if the entire case and all parties can come within its jurisdiction." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir.

2003). This requirement is usually satisfied "when the defendant is amenable to process in the other jurisdiction." *Piper*, 454 U.S. at 254 n.22 (quotation omitted). No Defendant objects to jurisdiction in The Bahamas. *See* [46] at 13. In other words, they are "amenable to process," and The Bahamas is an available alternative forum.

The Bahamas is also an adequate alternative forum. "An alternative forum is adequate if 'the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" *Vasquez*, 325 F.3d at 671 (quoting *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379–80 (5th Cir. 2002)). As discussed above, the fact that The Bahamas does not allow contingency fees and does not have jury trials does not make it an inadequate forum. And many courts have found that The Bahamas is an adequate alternative forum. *See Wylie v. Island Hotel Co. Ltd.*, No. 2018 WL 3421374, at *2 (S.D. Fla. July 13, 2018) (citing cases).

### 2. Private Interest Factors

The private interests a court must consider when deciding a *forum non conveniens* motion include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *Saqui*, 595 F.3d at 213.

Because the parties did not discuss the third or fifth factors, the Court finds those factors are neutral and only analyzes the other three factors.

25

a.  Ease of Access to Evidence

Defendants contend this factor favors dismissal because the alleged incident occurred in The Bahamas, all relevant documents "were created and are maintained in The Bahamas," and most of the witnesses are in The Bahamas. [46] at 18. They supply the specific names of several security officers, managers, and other employees who worked at Atlantis Resort at the time of the accident who might serve as witnesses. [46-1] ¶ 8. They also maintain that they would likely call "third parties not under the control of any of the Defendants," including law enforcement, medical personnel, and the assailant. *Id.* ¶¶ 8–9.

Plaintiffs counter that Defendants "laundry list" of witnesses are "after the fact witnesses with no knowledge of the event," who offer little value to the case. [62] at 19–20. Plaintiffs submit that the most important witnesses are the Plaintiffs, named Defendants, and the Plaintiffs' treating physicians, "all of whom are located in the United States." *Id.* at 20. They also contend "there are no relevant documents in The Bahamas." *Id.* at 22.

This factor favors dismissal. Although not all of Defendants' listed witnesses are likely necessary for a fair trial, the Court is not persuaded that they are all "fact witnesses with no knowledge of the event." *See* [62] at 19–20. At the very least, Defendants will need to call the security officers who responded to the assault, the managers on duty who allegedly allowed the assailant to stay on Atlantis's premises, and the first responders who took part in the investigation surrounding the assault. Contrarily, Plaintiffs' treating physicians are not as important as

Defendants' listed witnesses. Although Ogden received medical treatment in Mississippi, his physician's testimony is relevant only to damages. *See Horberg*, 744 F. Supp. 2d at 1292. The ease of access to evidence therefore favors Defendants.

### b. Compulsory Process

That many key witnesses, not within the Court's compulsory process, are in The Bahamas also favors dismissal. *See Horberg*, 744 F. Supp. 2d at 1291–92. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury[,] or most litigants." *Gilbert*, 330 U.S. at 511; *DTEX*, 508 F.3d at 799. Even assuming Defendants can compel its employees to travel to the United States, many potential witnesses cannot be compelled to testify in a Mississippi federal court. Those witnesses include the first responders and any witnesses who no longer work for Defendants. This factor favors dismissal.

### c. View of the Premises

Plaintiffs' claims may require a viewing of their hotel room. Their claims include negligent maintenance of the hotel room door, failure to provide a self-closing door, failure to provide a self-locking door, and failure to provide adequate security. *See* [1-1] ¶ 35; [62] at 20–21. It is foreseeable those claims may require the finder of fact to view the hotel premises. This factor favors dismissal.

The first, second, and fourth private interest factors weigh heavily in favor of dismissal, and the third and fifth factors are neutral. And as discussed above, all of the public interest factors, except one, favor dismissal. *See supra* Part III.A.3.

Accordingly, a trial in The Bahamas "will best serve the convenience of the parties and the interests of justice." *See DTEX*, 508 F.3d at 795. This case should be dismissed without prejudice to allow Plaintiffs to refile their case in The Bahamas.[3]

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated:

- Defendants' [45] Motion to Dismiss is GRANTED;

- Plaintiffs' [52] Motion for Discovery is DENIED;

- Plaintiffs' [63] Motion to Strike the Affidavit of Jack Tamburello is DENIED as moot;

- Defendants' [73] Motion to Strike the Affidavit of James W. Smith, Jr., is DENIED as moot;

- Plaintiffs' [78] Motion for Oral Argument is DENIED;

- Defendants' [80] Motion to Strike Plaintiffs' Supplemental Response is GRANTED;

- Plaintiffs' [83] Motion for Leave to File a Supplemental Response is DENIED.

This case is DISMISSED WITHOUT PREJUDICE. The Court will issue a separate final judgment consistent with this Order.

SO ORDERED, this the 23rd day of June, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court dismisses this case based on the FSC and *forum non conveniens* grounds, it need not consider Defendants' argument that it does not have personal jurisdiction over them.